UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Notoka Marbles,

           Plaintiff,

   v.                                   **MEMORANDUM OPINION AND ORDER**
                                               Civ. No. 07-00006 ADM/JSM

Medica Health Plans,
Medica Holding Company, and
Medica Insurance Company,

           Defendants.

_____

Jordan S. Kushner, Esq., Law Office of Jordan Kushner, Minneapolis, MN, argued on behalf of Plaintiff.

Daniel G. Prokott, Esq., and Mary Stumo, Esq., Faegre & Benson, LLP, Minneapolis, MN, argued on behalf of Defendants.

_____

## I.  INTRODUCTION

On May 13, 2008, the undersigned United States District Judge heard oral argument on Defendants Medica Health Plans, Medica Holding Company, and Medica Insurance Company's (collectively "Medica") Motion for Summary Judgment [Docket No. 67]. In her Complaint [Docket No. 1], Plaintiff Notoka Marbles ("Marbles"), an African-American, alleges violations of Title VII of the Civil Rights Act ("Title VII") and the Minnesota Human Rights Act ("MHRA"). First, Marbles alleges that Medica acted with discriminatory motive in failing to promote her in violation of 42 U.S.C. § 1981 and Minn. Stat. § 363A.08, subd. 1(2). Second, Marbles alleges that, after she complained about discriminatory treatment, Medica retaliated against her by placing her on a development plan in violation of 42 U.S.C. § 2000e and Minn. Stat. § 363A.15. For the reasons set forth below, Defendants' Motion is granted on both claims and Marbles' Complaint is dismissed.

## II.  BACKGROUND[1]

Medica hired Marbles on March 13, 2003, as a provider analyst in the Provider Services Department.  Compl. ¶ 6.  In December 2004, Marbles moved to Medica's Operations Department as a claims specialist.  Id.  In her 2004 performance review, Marbles was given a year-end rating of "Solid Performer."  Defs.' Exs. [Docket No. 70] at 143.  In August 2005, Medica promoted Marbles to operations research lead.  Compl. ¶ 6.  The predicate events to Marbles' claims took place between October 2005 and November 2006.

**A.      Fall 2005 Project Manager Position**

In August 2005, Medica posted an opening for a project manager-operations implementation position in the Operations Department.  Cornwell Aff. [Docket No. 26] at ¶ 4.  Medica, which assigns a "job requisition number" to each new job posting, assigned job requisition number 1030 ("Job No. 1030") to the project manager-operations implementation position.  Id.  Marbles applied for Job No. 1030 in October 2005.  Marbles Dep. (Kushner Aff. [Docket No. 74] Ex. A) at 35.

Marj McMurtrey ("McMurtrey"), who made the hiring decision for Job No. 1030, interviewed Marbles in late October 2005.  In the interview, McMurtrey discussed concerns she had heard from Marbles' supervisor, Amy Reinhardt ("Reinhardt"), about Marbles' organizational and follow-up skills.  McMurtrey Dep. (Defs.' Exs.) at 58.  The interview with McMurtrey was the first time these concerns were brought to Marbles' attention.  Marbles Dep. (Kushner Aff. Ex. A at 7).  Despite her reservations, McMurtrey scheduled Marbles for a second

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

round interview before a panel of three individuals: Liz Herstein ("Herstein"), Anne Medin ("Medin"), and Yvette Walton ("Walton"). McMurtrey Dep. (Kushner Aff. Ex. F) at 55; Defs.' Ex. at 51. All three panelists directly reported to McMurtrey. McMurtrey Dep. (Defs.' Exs.) at 41. In a conversation with McMurtrey following the second round interview, Herstein and Medin raised concerns about Marbles' follow-up and organizational skills, while Walton expressed support for Marbles' candidacy. McMurtrey Dep. (Kushner Aff. Ex. F) at 54. In response, McMurtrey expressed her concern that Marbles and the other candidates lacked leadership experience, a qualification she believed was critical for the position. McMurtrey Dep. (Defs.' Exs.) at 62. Medica formally rejected Marbles as a candidate for Job No. 1030 in February 2006. Marbles Dep. (Kushner Aff. Ex. A) at 48. Ultimately, McMurtrey concluded that none of the candidates were suitable for Job No. 1030 and she opted not to fill the position. Cornwell Aff. ¶ 9; Ex. A.

**B.      Marbles' April 2006 Discrimination Complaint**

After her interview for Job No. 1030, Marbles sensed she was being subjected to racial discrimination. She believed she had been denied Job No. 1030 because of her race and that her supervisors were discriminating against her in her role as operations lead. Marbles Dep. (Kushner Aff. Ex. A) at 49, 196. Marbles contends that in a meeting with Reinhardt in late April 2006 she expressed her belief that she was being held to a higher standard because of her race. Marbles Dep. (Defs.' Exs.) at 11-12. Although Reinhardt acknowledges that Marbles complained of being held to a higher standard, she disputes that Marbles raised the issue of race discrimination. Reinhardt Dep. (Defs.' Exs.) at 82-83.

On April 23, 2006, Marbles wrote a letter to the EEOC and Medica's Human Resources Department ("Medica HR") complaining of racial discrimination by Marbles' supervisors, including Reinhardt. Defs.' Exs. at 289-300.

**C.    Marbles' Knowledge and Skills Development Plan**

On April 27, 2006, following a one-on-one meeting with Marbles, Reinhardt met with Nicole Conner ("Conner") from Medica HR to discuss communication issues between Reinhardt and Marbles. Reinhardt Dep. (Defs.' Exs.) at 80. Reinhardt sought a way to document her expectations for Marbles in writing. Id. Together, Conner and Reinhardt decided to place Marbles on a Knowledge and Skills Development Plan ("KSDP"). Conner Dep. (Defs.' Exs.) at 3; Reinhardt Dep. (Defs.' Exs.) at 82. Medica officially placed Marbles on the KSDP on May 2, 2006. KSDP (Defs.' Exs. at 201). Reinhardt and McMurtrey presented the plan to Marbles on May 4, 2006. Reinhardt's Notes (Defs.' Exs. at 165). The KSDP states that it "establishes goals and objectives to assist you in further building your job skills and abilities." Defs.' Exs. at 201. Marbles' three page KSDP included expectations for Marbles' performance, specific steps she needed to take to meet the expectations, and procedures for measuring her progress. Defs.' Exs. 201-203. The ten expectations set forth on the KSDP included creating processes, meeting deadlines, initiating meetings, working on time management skills, following up with customers, and improving work attendance. Id. at 202. Marbles, Conner, and Reinhardt did not view the KSDP as a disciplinary action. Marbles Dep. (Defs.' Exs.) at 58; Conner Dep. (Defs.' Exs.) at 3; Reinhardt Dep. (Defs.' Exs.) at 79.

**D.      Spring 2006 Project Manager Position**

On April 17, 2006, Medica posted job requisition number 1340 ("Job No. 1340"), a project manager-operations position. The person hired for Job No. 1340 would have replaced Walton, and reported directly to McMurtrey. Medica Position Management Form (Defs.' Exs. at 214). Marbles considered applying for this position, but was concerned about how her KSDP would affect her candidacy. Marbles Dep. (Kushner Aff. Ex. A) at 317. Accordingly, Marbles sent an e-mail to McMurtrey on May 9, 2006, asking if the KSDP barred her from applying for Job No. 1340. Marbles Dep. (Kushner Aff. Ex. A) at Exhibit 12. McMurtrey responded,

> A KSDP does not prevent you from applying for available jobs in the company, Notoka. With regard to the applying for the project manager job, most of the development opportunities on your KSDP are areas in which I would be looking for strength in a candidate. Before I could consider you ready for the project manager job, you would need to demonstrate and sustain strength in those areas.

Id. Marbles interpreted this e-mail as McMurtrey telling her that she could not apply for Job No. 1340 and therefore, she did not apply for the position. Marbles Dep. (Kushner Aff. Ex. A) at 317; Marbles Dep. (Defs.' Exs.) at 60-62. Medica cancelled Job No. 1340, without filling it, on June 26, 2006. Medica Position Management Form (Defs.' Exs. at 214).

**E.      August 2006 Manager, Quality and Training Commercial Services Position**

In August 2006, Marbles applied for a manager, quality and training commercial customer service position. Defs' Exs. 216-217. Pat Bannochie, a selection specialist, screened Marbles' resume and passed it to Jane Tressman, ("Tressman") the hiring manager for the position. Tressman declined to interview Marbles. Medica filled the position in January 2007 with Teri Wright ("Wright"), a Caucasian female. Defs' Exs. at 221; Kushner Aff. Ex. J at 12.

Marbles asserts three claims in her Complaint. First, that Medica discriminated against her when it failed to promote her to Job No. 1030 or Job No. 1340. Second, Marbles asserts that Medica retaliated against her for the April 23, 2006, complaint to the EEOC by placing her on the KSDP. Third, Marbles asserts a retaliatory failure to promote claim based on Medica's failure to promote her to the August 2006 manager, quality and training commercial services position. Medica seeks summary judgment on all claims.

### III. DISCUSSION

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

**A.     Failure to Promote Claim**

Marbles acknowledges that there is no direct evidence that race was the motivating factor behind Medica's decision not to promote her to either project manager position and instead relies upon the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973). Under the McDonnell-Douglas framework, "[t]he complainant in a Title VII trial

6

must carry the initial burden under the statute of establishing a prima facie case of racial discrimination." Id. at 802; Davis v. KARK-TV, 421 F.3d 699, 704 (8th Cir. 2005).[2] To establish a prima facie case for failure to promote, Marbles must show (1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead. Younts v. Fremont County, Iowa, 370 F.3d 748, 754 (8th Cir. 2004).

### 1. Job No. 1030—Fall 2005 Project Manager Position

There is no dispute that Marbles (1) is a member of a protected group; (2) was qualified and applied for Job No. 1030; and (3) was rejected. A plaintiff's prima facie case for failure to promote fails when the job at issue was never filled. Schiltz v. Burlington N. R.R., 115 F.3d 1407, 1413 (8th Cir. 1997); Farris v. Exotic Rubber and Plastics, 165 F. Supp. 2d 916, 918 (D. Minn. 2001); Sanders v. Johnson Bros. Liquors, No. 05-686, 2006 WL 3081050 (D. Minn. Oct. 27, 2006). Medica asserts that Marbles cannot meet the fourth prong of the prima facie case because the job was never filled.

McMurtrey, the hiring manager for Job No. 1030, was unable to find a candidate possessing the leadership skills that she required for the project manager role. As a result, the record shows that Medica cancelled Job No. 1030 without filling the position. Marbles does not dispute that Job No. 1030 was not filled. Compl. ¶ 11. Therefore, because Medica never filled the position, Marbles cannot establish the fourth prong of the prima facie case for failure to promote her to Job No. 1030.

---

[2] The burden-shifting framework also applies to Marbles' MHRA claims. Sigurdson v. Isanti County, 386 N.W.2d 715, 719 (Minn. 1986) (holding that MHRA claims are analyzed under Title VII principles).

### 2.     Job No. 1340—Spring 2006 Project Manager Position

Medica asserts that Marbles cannot base a prima facie case for failure to promote on Job No. 1340 because she never applied for the position and again, the position was never filled. As with Job No. 1030, McMurtrey was the hiring manager and was unable to identify a suitable candidate. As a result, the record shows that on June 26, 2006, Medica cancelled Job No. 1340 without filling the position. Defs.' Exs. at 214.

Marbles asserts that although Job No. 1340 was officially cancelled, the position was actually filled by Tiffany Storms ("Storms"), a Caucasian female who transferred from Medica's Provider Services Department in March 2007. This assertion has no support in the record. Although Storms is listed on Medica's organizational chart as a project manager in the Operations Department as of March 2007, Storms Dep. (Kushner Aff. Ex. D) Ex. 18, the circumstances of Storms' hiring do not support an inference that the project manager position Storms occupied on the March 2007 organization chart is in fact Job No. 1340. First, Storms was not hired until March 2007, approximately nine months after Medica officially cancelled Job No. 1340. Second, McMurtrey, who made the hiring decision on Job No. 1340 and would have supervised the successful candidate, was not involved in hiring or supervising Storms after she was hired. Storms' transfer was arranged by her supervisor in Provider Services, Cheryl Wilson, and the director of operations, Susan Gamache ("Gamache"). Storms Dep. (Kushner Aff. Ex. D) at 17. While working in the Operations Department, Storms received assignments directly from Gamache. Id. at 28. Viewing the facts in the light most favorable to Marbles, it is not plausible to infer that Storms filled Job No. 1340, nine months after it was officially canceled and without McMurtrey being involved in either a hiring or supervisory capacity. To the contrary, the record

indicates that Medica never filled Job No. 1340. Accordingly, Marbles cannot establish the fourth prong of her prima facie case based on Job No. 1340. Having determined Medica never filled Job No. 1340, it is unnecessary to discuss Medica's assertion that Marbles never applied for the position except to note that it also appears to be a strong argument.

**B.     Retaliation Claims**

Marbles asserts that, following her complaint to the EEOC and Medica HR, Medica retaliated against her by placing her on the KSDP and failing to promote her to the August 2006 manager position. Again, there is no direct evidence of retaliation in the record. Thus, relying upon the McDonnell-Douglas burden shifting framework, Marbles must first establish a prima facie case of retaliation. Gilbert v. Des Moines Area Cmty. College, 495 F.3d 906, 917 (8th Cir. 2007). In order to establish a prima facie case of retaliation, Marbles must show that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the adverse action and the protected activity. Id. Marbles' complaint to the EEOC on April 23, 2006, satisfies the first element of the prima facie case for both claims. Medica asserts that placing Marbles on the KSDP does not satisfy the final two elements because the KSDP is not an adverse action and because there is no causal connection between the KSDP and Marbles' complaint. Medica further asserts that failing to promote Marbles to the August 2006 manager position was not an adverse action because Marbles cannot show that she and the successful candidate were similarly situated.

An adverse employment action must be one that produces a material employment disadvantage. Higgins v. Gonzalez, 481 F.3d 578, 584 (8th Cir. 2007). Termination, cuts in pay or benefits, and changes that affect an employee's future career prospects are significant enough

to meet the standard, as would circumstances amounting to a constructive discharge. Id. Minor changes in duties or working conditions, even unpalatable or unwelcome ones, which cause no materially significant disadvantage are not adverse employment actions. Id.

The KSDP does not constitute a materially adverse action because it did not change Marbles' duties, did not reduce or deny her pay, and did not prevent her from coming to work. Further, both Marbles and Medica understood that the KSDP was not a disciplinary action. Marbles Dep. (Defs.' Exs.) at 58; Conner Dep. (Defs.' Exs.) at 3; Reinhardt Dep. (Defs.' Exs.) at 79.

The KSDP, in that it highlights weaknesses and sets expectations for improvement, can be viewed as analogous to a poor performance review. The Eighth Circuit has held that a poor performance review, unless it is used as the basis to detrimentally alter the terms and conditions of the recipient's employment, does not constitute a materially adverse action. Higgins, 481 F.3d at 586 (8th Cir. 2007); see also Gilbert, 495 F.3d at 917. In Higgins, the Eighth Circuit held that a negative performance review was not an adverse action because there was no evidence that the review was used as a basis to detrimentally affect Higgins' employment. To the contrary, the record indicated Higgins was retained in the same position, at the same pay level, and with the same duties and benefits that she enjoyed prior to the negative performance review. 481 F.3d at 586. In Gilbert, the plaintiff could not show any harm flowing from the poor review; thus the negative performance review was not an adverse action. 495 F.3d at 917.

Marbles argues the KSDP had the detrimental effect of denying her the opportunity to apply for Job No. 1340, the Spring 2006 project manager position. In support of this claim, Marbles relies on her e-mail exchange with McMurtrey about whether she could apply for Job

No. 1340 while on the KSDP.  In fact, McMurtrey's e-mail explicitly informed Marbles that the KSDP *"does not* prevent" Marbles from applying for a project manager position.  While McMurtrey cautioned Marbles that a successful candidate would demonstrate sustained strength in the areas that the KSDP identified Marbles as needing improvement, she did not say that the KSDP barred Marbles from applying.  The KSDP highlighted the same organization and follow-up concerns that McMurtrey discussed with Marbles in October 2005 and that were previously raised on Marbles' 2005 performance review.[3]  Defs.' Exs. at 119.  The last line of McMurtrey's e-mail, "Before I would consider you ready for the project manager job, you would need to demonstrate and sustain strength in those areas," is evidence the pre-existing issues highlighted by the KSDP, and not the KSDP itself, were the reasons why McMurtrey did not feel Marbles was ready for the project manager position.

For these reasons, the KSDP did not detrimentally alter the terms or conditions of Marbles' employment. After being placed on the KSDP Marbles was retained by her employer with the same pay, duties, benefits, and opportunity for advancement as before the negative performance review.  Because the KSDP is not a materially adverse action, Marbles cannot establish a prima facie case of discriminatory retaliation.  Because Marbles cannot establish the materially adverse element of the prima facie case, it is unnecessary to discuss Medica's assertion that there is no causal connection between the KSDP and Marbles' complaint to the EEOC.  Accordingly, Medica is granted summary judgment on the retaliation claim regarding the KSDP.

---

[3] The KSDP does raise for the first time of record the issue of Marbles' attendance. However, there is no indication that the presence of the attendance expectation detrimentally altered Marbles' conditions of employment.

Marbles' cannot establish a prima facie case for retaliatory failure to promote based on Medica's failure to promote her to the August 2006 manager, quality training and commercial services position. A prima facie case for retaliatory failure to promote requires Marbles to show that she was similarly or equally as qualified as the person who received the promotion. Brown v. Mo. State Highway Patrol, No. 02-2090, 56 F. App'x. 282, 285 (8th Cir. 2003). Marbles has failed to meet this burden. Marbles offers no evidence in the record showing that her qualifications were similar to those of Wright, the successful candidate. To the contrary, the record shows that, at the time Medica filled the position, Wright possessed a higher level of education and more relevant experience than Marbles. Defs.' Exs. 314-317. Accordingly, Medica is granted summary judgment on the retaliatory failure to promote claim.

## IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants Medica Health Plans, Medica Holding Company, and Medica Insurance Company's Motion for Summary Judgment [Docket No. 67] is **GRANTED** and Plaintiff Notoka Marbles' Complaint [Docket No. 1] is **DISMISSED**

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  July 22, 2008.